IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALEJANDRO GARCIA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-2521-N |
| | § | |
| DALLAS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Dallas County, Texas' (the "County") Rule 12(c) motion for judgment [5]. For the reasons that follow, the Court grants the County's motion in part and denies it in part.

### I. ORIGINS OF THE COUNTY'S MOTION

The County employs or employed Plaintiffs, current and former deputy constables (the "Deputies"). The Deputies filed suit on December 11, 2009 in the 162nd Judicial District Court of Dallas County, Texas. On November 10, 2010, the Deputies filed their first amended petition, which included federal claims, and the County removed the action to this Court on December 10, 2010. In their first amended petition, the Deputies allege that the County is liable for its constables' actions where the constables allegedly violated the Deputies' First Amendment rights to free speech and free association, terminated two Deputies in retaliation for exercising their First Amendment rights, violated the Deputies' Fourteenth Amendment rights to substantive and procedural due process, violated the

ORDER – PAGE 1

Deputies' Texas Constitutional rights to due process, violated the Texas Local Government Code § 160.001, *et seq.*, and violated the Texas Transportation Code § 720.002.

Specifically, the Deputies allege that Constable Derick Evans and former Constable Jaime Cortes (collectively, the "Constables") coerced them into selling raffle tickets and personally purchasing the tickets themselves to assist the Constables in fundraising for their political campaigns by threatening the Deputies with loss of their employment and denial of approval of paid, off-duty work assignments.[1]  The Deputies allege that the Constables coerced them in the same way to perform unpaid law enforcement services during off-duty time at for-profit and political campaign events.  Further, the Deputies allege that the Constables subjected them to termination, threats regarding loss of their position, various disciplinary actions, transfers to different assignments, and inappropriately negative performance evaluations for failing to write a sufficient number of citations and/or impound a sufficient number of vehicles after traffic stops under an unlawful quota system.  They claim that the Constables' pressure to increase traffic citations and impoundments derived from a contract between the Constables' precincts and a donor to the Constables' campaigns, Dowdy Ferry Towing, to tow vehicles pursuant to citation.  Finally, two terminated deputy constables, Garcia and Harris, allege that they were terminated in retaliation for speaking out

---

[1]The Court judicially notices that on July 2, 2012 in the 363rd Judicial District Court in Dallas County, Texas, Constable Derick Evans was convicted of "engaging in organized criminal activity" by setting up an illegal raffle for the benefit of his reelection campaign. He was sentenced to two years probation and fined $10,000.  The Court additionally judicially notices that former Constable Jaime Cortes resigned from his position in May 2010 and is currently facing charges for tampering with government documents for failing to report contributions on campaign disclosure forms.

ORDER – PAGE 2

about the Constables' behavior and that they were not afforded the protection of the Dallas County Civil Service System because they were not allowed an opportunity to contest their terminations.

The County moved for judgment on the pleadings, arguing that caselaw under 42 U.S.C. § 1983 bars the Deputies' federal constitutional claims, that the Deputies have no viable causes of action for federal procedural and substantive due process violations, and that to the extent the Deputies are alleging state constitutional violations, the Deputies cannot recover damages from the County under the Texas Constitution.

## II. THE COURT GRANTS IN PART AND DENIES IN PART THE COUNTY'S MOTION

### A. *Rule 12 Standard*

When faced with a Rule 12(c) or Rule 12(b)(6) motion to dismiss,[2] the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn*

---

[2]It is possible that the County's Rule 12(c) motion for judgment should be considered as a Rule 12(b)(6) motion to dismiss. A Rule 12(c) motion for judgment on the pleadings is proper only once the pleadings are closed. *See* FED. R. CIV. P. 12(c); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 211-14 (3d ed. 2004). Here, the Deputies filed their original petition in state court [1-6], the County answered [1-8], the Deputies filed their first amended original petition asserting federal claims [1-21], the County removed to this Court [1] and filed its motion for judgment without having answered the amended petition. If the failure to answer the amended pleading means that pleadings are not closed, *see* FED. R. CIV. P. 7(a), the Court could consider the County's Rule 12(c) motion as a Rule 12(b)(6) motion. *See, e.g.*, *Shakir v. Chase Home Fin., N.A.*, 2011 WL 4386303, at *1 (N.D. Miss. 2011) (citing *Knight v. Storex Sys., Inc.*, 739 F. Supp. 739, 743 (N.D.N.Y. 1990) and *NY State United Teachers v. Thompson*, 459 F. Supp. 677, 680 (N.D.N.Y. 1978)), *adopted*, 2011 WL 4383803 (N.D. Miss. 2011). The Court need not resolve this somewhat academic question, however, because the substantive standard is the same for both rules. *See, e.g.*, *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

*v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)]. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

ORDER – PAGE 4

> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, the Court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B. The Deputies State a Viable Claim Against the County Under Section 1983

The County contends that the Court may not hold it liable for constitutional violations based on the Constables' actions because they are not final policymakers. The Supreme Court has held that a local government cannot be vicariously liable under 42 U.S.C. § 1983[3] for an injury inflicted by its employees or agents. *See Monell v. Dep't of Soc. Servs. of the City of NY*, 436 U.S. 658, 694 (1978). However, a local government may be liable for actions by a county official with final policymaking authority that inflict a constitutional

---

[3]Section 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ORDER – PAGE 5

injury. *See id.* A single decision made by such an official can be grounds for section 1983 liability. *Gelin v. Houston Auth. of New Orleans*, 456 F.3d 525, 527 (5th Cir. 2006) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S 701, 737 (1989) ("*Jett I*") and *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 698 (5th Cir. 1998)).

In determining whether a local government is liable for a county official's actions, courts must distinguish between final decisionmaking authority and final policymaking authority. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) ("*Jett II*"); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (plurality opinion); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (plurality opinion). The Fifth Circuit has counseled that the existence of effective administrative review over a county official's decision is relevant to show that the official is *not* a final policymaker – only a final decisionmaker. But, the reverse is not necessarily true – the absence of administrative review does not alone mean that the official is a final policymaker. *See Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 550 n.4 (5th Cir. 2008). In discussing how administrative review affects whether an official is a final policymaker or a final decisionmaker, the Supreme Court used the following example in *Pembaur*:

> [T]he County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. . . . Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board *delegated* its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

ORDER – PAGE 6

475 U.S. at 483 n.12 (first emphasis added).  In other words, "[t]hat a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'"  *Jett II*, 7 F.3d at 1248 n.11 (quoting *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992)).  Thus, there is no such thing as a "de facto final policymaking authority."  *See id.* (citing *Pembaur*, 475 U.S. at 1247).  Instead, an official is the final policymaker if he or she exercises policymaking authority *delegated* by an otherwise final policymaker.  Ultimately, the identification of final policymakers is a question of state law.  *McMillan v. Monroe Cnty., Ala.,* 520 U.S. 781, 786 (1997) (citing *Jett I*, 491 U.S. at 737).

Here, the Deputies allege that the Constables coerced them into selling raffle tickets for the Constables' reelection campaigns in violation of their First Amendment rights to free speech and free association.  They allege that the Constables effectuated the coercion by, among other things, threatening the loss of their position as deputy constables and reminding the deputy constables of their status as non-civil service employees.[4]  Pls.' First Am. Pet., at Part IV.U.  In other words, the Constables relied on their unreviewable authority to terminate the deputy constables to coerce them into selling raffle tickets.[5]  The Deputies further allege that the Constables deprived them of their Fourteenth Amendment right to substantive due

---

[4]Plaintiffs Garcia and Harris further allege that they were terminated for speaking out on matters of public concern in violation of their First Amendment right to free speech. Pls.' First Am. Pet., at Part V.H.

[5]Importantly, it matters not that constables in other precincts are not alleged to have participated in the "policy," because "[section] 1983 accepts such nonuniformity" among final policymakers.  *See* 4 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law – Substance & Procedure § 1918(b) (4th ed. 2011).

process by taking action that was arbitrary and shocking to the conscience. In support, they cite to the above alleged actions, as well as the alleged facts that the Constables established a ticket quota system and towing policy in violation of Texas law and that the Constables required the Deputies to provide volunteer services without compensation.

In analyzing whether the Court may hold the County liable for the Deputies' allegations, the Court first examines the way in which the State of Texas has structured the deputy constable position. The Texas Local Government Code provides that "[a]n elected constable who desires to appoint a deputy must apply in writing to the commissioners court of the county and show that it is necessary to appoint a deputy in order to properly handle the business of the constable's office . . . ." TEX. LOC. GOV'T CODE § 86.011(a). The Code further states that where the commissioners court determines that the constable needs a deputy, it "*shall* approve and confirm the appointment." *Id.* (emphasis added). The Texas Local Government Code also grants to constables the authority to appoint deputy constables, *see id.* at § 151.003 ("After the entry of the commissioners court's order, the officer applying for the employees may appoint them."), and restricts commissioners courts from exercising authority over that appointment other than allocating funding. *See Harris Cnty. Tex. v. Nagel*, 349 S.W.3d 769, 793 (Tex. App. – Houston [14th Dist.] 2011, no pet.) ("Only the constable has supervisory authority over the deputy constables; the commissioners court's only authority over the deputies is budgetary. . . . [The commissioners court] approves the number of deputies the constable may appoint, but not the individual appointments." (internal citations omitted)). Additionally, once appointed, commissioners courts cannot rescind the

ORDER – PAGE 8

deputy constable's appointment. *See* Tex. Att'y Gen. Op. No. 0-7081 (1946). Thus, the commissioners court has no authority to appoint or terminate deputy constables. *Nagel*, 349 S.W.3d at 793; *Greenway v. Roccaforte*, 2009 WL 3460683, at *4 (Tex. App. – Beaumont 2009, pet. denied) (mem. opinion) ("Appointment of deputy constables is within the exclusive control of the constable. Texas law provides sheriffs, and other elected county officials, virtually unbridled authority in hiring and firing their employees." (internal citations and quotations omitted)). This structure, without more, establishes that Dallas County constables are the de facto authority on hiring and firing deputy constables. *Cf. Bolton*, 541 F.3d at 550 n.4 (holding that the fact that a constable's actions are unreviewable is not alone enough to establish final policymaking authority). However, because the Supreme Court does not recognize de facto final policymakers for purposes of section 1983 liability, the Court next analyzes to what extent Dallas County constables make employment policy for the County with respect to their offices.

In Dallas County, three members of the commissioners court, acting as the County's civil service commission, make employment policy. *See* Dallas Cnty., Tex., Code of Ordinances ch. 86, art. II (2011), *available at* http://library.municode.com/index.aspx?clientId=13347 (last visited June 13, 2012); TEX. LOC. GOV'T CODE § 158.009 (outlining powers of the commission). However, as discussed below, Dallas County has specifically chosen to exclude deputy constables from the policy. *See* Dallas Cnty., Tex., Code of Ordinances ch. 86, art. I, § 86.1(1) (2011) ("Category A employee includes . . . deputy constables hired after August 19, 2003 . . . . [C]ategory A classified employees are

excluded from coverage afforded in employment procedures relating to job posting, reduction-in-force, double-fill, reinstatement, reemployment, dismissals, right of appeal, and grievance system procedures of this Code.").

Dallas County has an interesting history with deputy constables, civil service, and litigation.

> Historically, civil service systems in Texas did not apply to employees who performed governmental functions in their own right. For precisely that reason, Dallas trial and appellate courts dismissed a civil service claim in the late 1980s by a Dallas County deputy constable, Floyd Arrington. [*Arrington v. Cnty. of Dallas*, 792 S.W.2d 468, 471 (Tex. App. – Dallas 1990, writ denied).]
>
> In response to that case, Dallas legislators introduced a bill whose express purpose was to grant civil service protection to deputy constables. Dallas County officials appeared at committee hearings to support the bill. The bill passed, and became effective September 1, 1989. Dallas County Commissioners then amended their civil-service system to add deputy constables – the only employees specifically named by ordinance as protected employees.
>
> In November 2000, Mike Dupree was elected Dallas County Constable, Precinct 6, defeating the incumbent constable in the Democratic primary and a Republican challenger in the general election. Before he took office, the constable-elect sent letters to deputy constables Stanley Gaines, James Gilliand, and Sonia Avina informing them they would not be reappointed in January. When they were denied a civil service hearing on this discharge, they filed suit.

*Cnty. of Dallas v. Wiland*, 216 S.W.3d 344, 362-63 (Tex. 2007) (Brister, J., concurring and dissenting) (footnotes omitted). On November 8, 2002, the district court in *Wiland* entered judgment in favor of the terminated deputies and against the County for approximately $2.1 million for violating civil service procedures in terminating the deputies. *See Cnty. of Dallas v. Wiland*, 124 S.W.3d 390, 394 (Tex. App. – Dallas 2003), *aff'd in part and rev'd in part*,

ORDER – PAGE 10

216 S.W.3d 344 (Tex. 2007) (date of judgment); *see also Wiland*, 216 S.W.3d at 351 (amount of judgment).  On August 19, 2003, while *Wiland* was on appeal before the Dallas Court of Appeals, the Dallas County Commissioners Court amended its policy manual again to exclude deputy constables from civil service.  *See Wiland*, 216 S.W.3d at 362 n.1.  One can speculate that this was in response to the $2.1 million *Wiland* judgment.

Eliminating civil service protection for deputy constables is more than a technicality. Perhaps stung by the $2.1 million judgment, Dallas County decided affording civil service protection to deputy constables was simply too expensive.  Consequently, it abdicated that oversight role to the Constables, the proverbial fox now guarding the henhouse.  By excluding deputy constables from the civil service system, deputy constables do not get civil service review of promotions, seniority, tenure, layoffs and dismissals, disciplinary actions, benefits, working conditions, or any other grievance they may have.  *See* Dallas Cnty., Tex., Code of Ordinances ch. 86, art. II, § 86-51 (2011).  In other words, the County has affirmatively chosen to grant its constables free rein over deputy employment, unchecked by civil service review.  In this case, that decision directly led to the Constables wielding their power in such a manner as to create an environment of fear and manipulation, facilitating, among other things, the violation of the Deputies' constitutional rights.  Indeed, this delegation effectively granted to the Constables the unrivaled and unchecked authority to govern not only the day-to-day activities of the deputy constables, but also the rules and unwritten policies that generally regulate their employment, as well as the means to enforce those rules.

This is unlike the situation in *Monell* where the Supreme Court was concerned about imposing liability on a governmental entity via the theory of respondeat superior. There, the Court held against respondeat superior liability because it would be patently unfair to impose liability on a municipality solely by virtue of a rogue act of one of its employees. But, in the course of its discussion of municipal liability, the *Monell* Court stated that municipalities can be held liable where the execution of a policy "by those whose edicts or acts may fairly be said to represent official policy" inflicts the injury. 436 U.S. at 694. Thus, in this context, it makes sense that the County can be held liable because its complete abdication of authority over deputy constable employment policy allegedly bred an environment where unchecked constitutional violations could occur. In effect, the Constables' actions may fairly be said to represent official policy.

The Court acknowledges that the Fifth Circuit has held on different facts that Texas constables in other counties are not final policymakers. *See, e.g.*, *Castro v. McCord*, 259 F. App'x 664, 668 (5th Cir. 2007) (unpub.); *Tonkin v. Harris Cnty. Tex.*, 257 F. App'x 762, 763-64 (5th Cir. 2007) (unpub.); *Frank v. Harris Cnty.*, 118 F. App'x 799, 802 (5th Cir. 2004) (unpub.); *Bowles v. Cheek*, 44 F. App'x 651, 2002 WL 1396929, at \*1 (5th Cir. 2002) (unpub.) (per curiam); *Keenan v. Tejeda*, 290 F.3d 252, 263 (5th Cir. 2002); *Pena v. Jimenez*, 31 F. App'x 833, at \*1 (5th Cir. 2002) (unpub.) (per curiam); *Rhode v. Denson*, 776 F.2d 107, 108-10 (5th Cir. 1985). *But see Murphy v. Butler*, 512 F. Supp. 2d 975, 990 (S.D. Tex. 2007) (holding, under rubber stamp exception, that Texas constable was a final policymaker where the commissioners court accepted constables' hiring and firing decisions without

ORDER – PAGE 12

question), *aff'd on reconsideration*, 2007 WL 1574302 (S.D. Tex. 2007) (affirmed on either of alternate grounds: on rubber stamp theory or by county's admission of constables' final policymaker status); *Nagel*, 349 S.W.3d at 793-94 (Texas state court holding that Texas constable was a final policymaker with regard to the delivery of mental health warrants where county commissioners court had allocated all funding and responsibility for the county-wide delivery of mental health warrants to constable's precinct).

However, this Fifth Circuit caselaw did not analyze Dallas County's structural carve-out of deputy constables from civil service protection, thereby delegating its authority over employment policy for deputy constables to Dallas County constables. Indeed, the above cases rely on an idea articulated in *Rhode v. Denson* that a constable's "range of choice" is limited and that a constable's power is not "marked by authority to define objectives and choose the means of achieving them." 776 F.2d at 109. As a later Texas state court expounded, Texas constables "do not hold full sway over the tasks entrusted to them" because "they do not define . . . objectives." *Merritt v. Harris Cnty.*, 775 S.W.2d 17, 24-25 (Tex. App. – Houston [14th Dist.] 1989, writ denied). But, as discussed above, in this context this is precisely the level of authority over employment that the Dallas County Commissioners Court delegates to its constables.

Dallas County constables, and not the Commissioners Court, make employment policy for deputy constables: Dallas County constables, and not the Commissioners Court, hold full sway over who to hire as a deputy constable, the extent of deputy constables' duties, how and whether to handle misbehavior and grievances on the job, and how and whether to terminate

ORDER – PAGE 13

deputy constables. Dallas County constables alone define employment policy objectives for deputy constables and have the full range of choice over deputy constables' employment that the Commissioners Court would have had if it had not delegated that authority to them. The authority Dallas County constables exercise is not mere "latitude to exercise discretion in pursuing objectives and employing means set by other agents." *Bigford v. Taylor*, 834 F.2d 1213, 1221 (5th Cir. 1988). Rather, Dallas County constables set both the objectives related to employing deputy constables and the means of achieving those objectives. *Cf. Van Ootenghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985) (holding that a county treasurer made policy where he "defined a general objective and set the means of achieving it"). The County's deliberate exclusion of deputy constables from its employment policy is crucial to the final policymaker question because of the Supreme Court's recognition of delegation as a legitimate source of final policymaking authority. Thus, the above Fifth Circuit authorities are inapposite to the particular facts relating to Dallas County constables' authority over their deputies.

Under these facts and this history, excluding deputy constables from civil service constitutes a delegation of authority by the Dallas County Commissioners Court to its constables to set employment policy for deputy constables hired after August 19, 2003. *See Pembaur*, 475 U.S. at 483 n.12 ("If county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. . . . However, if the Board delegated its power to establish final employment policy to the

ORDER – PAGE 14

Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.").[6]

The Texas Supreme Court in *Wiland* grappled with the question of whether affording civil service protection inherently implied a requirement of cause for termination. What is the point of civil service protection, the deputies argued, if employment is at-will? 216 S.W.3d at 353. Dallas County then responded that civil service protection "affords important procedural protections even though employment remains at-will. It assures that personnel decisions cannot be made willy-nilly and that employees are entitled to review at the highest level of county government – by a commission comprised of three members of the commissioners court." *Id.* Dallas County, having now decided it cannot afford to provide deputy constables with these "important procedural protections," cannot hide behind the shield of *Monell*.[7]

_____

[6]This is in contrast to several other Texas counties that have decidedly included deputy constables in the group covered by civil service protection. *See, e.g.*, *Aguilar v. Frias*, --- S.W.3d ---, 2012 WL 964209, at *1 (Tex. App. – El Paso 2012, pet. filed) (noting that deputy constable appealed his termination to the El Paso County Civil Service Commission); *Hurley v. Tarrant Cnty.*, 232 S.W.3d 781, 789 (Tex. App. – Fort Worth 2007, no pet.) (Tarrant County); Bexar Cnty., Tex., Civil Serv. Comm'n Rules & Regs. § 7.6.02 (Mar. 15, 2007), *available at* http://www.bexar.org/hr/docs/civil/7-6-02_ApplicationOfCivilService Rules.pdf (last visited June 12, 2012); Hidalgo Cnty., Tex., Civil Serv. Comm'n Rules § 2.18(b) (Nov. 12, 1997), *available at* http://www.co.hidaldo.tx.us/DocumentCenter/Home/ View/487 (last visited June 12, 2012); Cameron Cnty., Tex., Civil Serv. Rules & Regs. § 2.31 (May 24, 2006), *available at* http://www.co.cameron.tx.us/civilservices/ docs/CSCRulesRegs.pdf (last visited June 12, 2012).

[7]Indeed, a simpler way to understand the Deputies' claims may be that the County's decision to withdraw civil service protection from deputy constables – plainly a decision by a final policymaker – directly caused the consequences here.

Accordingly, the Deputies have alleged enough to state a claim for relief under section 1983,[8] and so the Court denies the County's motion on this claim.[9]

### C. The Deputies Cannot State a Claim for Violations of their Due Process Rights

The Deputies allege that the County deprived them of their right to substantive due process. "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). It does not, however, serve as an additional source of protection against behavior already protected against by another amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). "[It] requires only that public officials exercise professional judgment, in a nonarbitrary and capricious manner, when depriving an individual of a protected [life, liberty, or] property interest." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, (5th Cir. 2011) (citing *Tex. v. Walker*, 142 F.3d 813, 819 (5th Cir.1998)). In order to make a substantive due process claim arising in the public employment context, a plaintiff must have had a protected property interest in his employment, and the denial of such property interest must be arbitrary and capricious. *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997). And where, as here, the case

---

[8]Additionally, the Court finds that the Deputies have alleged sufficient facts to state a first amendment claim for retaliation. Because of this and because the County is silent as to this claim, the Court holds that the Deputies' retaliation claim survives.

[9]Some of the Deputies may have been grandfathered in to civil service protection by virtue of being hired before August 19, 2003. Whether that is the case, and if so what consequences might flow from that, are all matters that can be fleshed out in discovery.

implicates executive rather than legislative action, the abuse of power must shock the conscience in a constitutional sense, so that the conduct must be so outrageous that it is intended to injure in some way unjustifiable by any government interest. *See Cnty. of Sacramento v. Lewis*, 523 U.S. at 846-49 & n.8.

The Deputies allege that the County violated their right to substantive due process by: establishing a ticket quota system and towing policy in violation of Texas law, requiring them to sell raffle tickets to benefit the Constables' reelection campaigns, and requiring them to perform volunteer services without pay.[10]  First, the Court observes that none of the Deputies had a property right in continued employment because the Texas Supreme Court has held that, absent some modification, deputy constables are at-will employees. *See Wiland*, 216 S.W.3d at 347-48.  Thus, to the extent that Plaintiffs Garcia and Harris allege that the County denied them substantive due process by terminating them,[11] they are

---

[10]The Deputies attempt to argue in their response that the County further infringed their substantive due process rights by its failure to establish an alternative grievance system that did not involve review of grievances by the Constables, despite the Deputies' complaints to Dallas County's Judge, Commissioners Court, and Human Resource Department. *See* Pls.' Resp. to Def. Dallas Cnty. Tex.' Rule 12(c) Mot. J. 11 [8].  However, the Court does not consider this and other allegations not referenced in the Deputies' first amended petition.

[11]The remaining Plaintiffs do not allege that the County terminated them.  They allege only that they "w[ere] subjected to various disciplinary actions, transfers to different assignments and inappropriately negative performance evaluations."  Pls.' First Am. Pet., Part IV.Q.  However, this is not enough to constitute a deprivation of liberty or property. *See McCall v. Dallas Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 632-33 (N.D. Tex. 2001) (Lindsay, J.) (holding that a demotion of an at-will employee or an employee whose contract does not preclude demotion at will is not a deprivation).

mistaken.[12]  Additionally, forcing the Deputies to sell raffle tickets cannot form the basis of a substantive due process claim because the First Amendment seemingly protects against such behavior.  And to the extent that the other alleged bases for the substantive due process claim are considered deprivations of liberty or property,[13] the claim also fails because the alleged deprivations are not of the nature that they shock the conscience in a constitutional sense.  Accordingly, the Court dismisses the Deputies' federal due process claims.

### D. The Deputies Cannot State a Claim for Violations of the Texas Constitution

In their first amended petition, the Deputies generally recite the Due Process Clause of Texas' Constitution without further explanation.  *See* Pls.' First Am. Pet., Part III.C.  To the extent that the Deputies seek to assert Texas due process claims, those claims fail for the reasons discussed above regarding their federal due process claims.  Additionally, Texas does not recognize a private right of action for money damages relating to alleged violations of rights under the Texas Constitution.  *See Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469

---

[12]To the extent the Deputies allege a procedural due process violation on this ground, this claim also fails.  *See Greenway*, 2009 WL 3460683, at *4 ("An at-will employee may be fired for any reason or no reason at all.  Deputy constables are at-will employees." (internal citations omitted)).

The Deputies also argue in their response to the County's motion for judgment on the pleadings, that the County violated their rights to procedural due process because "[w]ithin the Dallas County Code, certain deputy constable Plaintiffs were afforded county civil service system protections while other deputy constable Plaintiffs were not."  Pls.' Resp. to Def. Dallas Cnty. Tex.' Rule 12(c) Mot. J. 11.  However, because the Deputies did not allege this in their first amended petition, the Court does not consider the argument.  *See supra* note 8.

[13]The Court does not hold that they should be so considered.

ORDER – PAGE 18

(Tex. 1997) (extending *City of Beaumont v. Bouillion*'s[14] holding – that because Texas has no provision comparable to § 1983 there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution – to due process claims under Texas Constitution).  Accordingly, the Court dismisses the Deputies' state due process claims.

### E. The Deputies' Declaratory Judgment Requests Survive

Because the County did not specifically address the Deputies' requests for declaratory judgment, the Court declines to dismiss them.

### CONCLUSION

The Court dismisses the Deputies' federal and state due process claims, but declines to dismiss the Deputies' section 1983 claims and requests for declaratory judgment.

The Court also certifies this Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) as the Order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b).

Signed July 23, 2012.

David C. Godbey
United States District Judge

---

[14]896 S.W.2d 143, 147 (Tex. 1995).

ORDER – PAGE 19